**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

DEC - 2 2011

| | |
|---|---|
| **JAMES BOWMAN,** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. **3:08CV449–HEH** |
| ) | |
| **GENE JOHNSON**, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
### (Granting Defendant Thomas's Second Motion for Summary Judgment)

Plaintiff James Bowman, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, brings this action for injunctive relief and damages under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights.  Bowman has a history of hip problems, which he contends were not adequately accommodated while he was incarcerated.  Over the course of this litigation, both the defendants and the claims alleged against them have been pared down substantially, leaving a single claim against Defendant Nurse Cathy Thomas.  The matter is presently before the Court on Thomas's Second Motion for Summary Judgment and Motion for Substitution of Counsel.  For the reasons set forth below, Thomas's motions will be granted.

## I. PERTINENT PROCEDURAL HISTORY

The Court first received Bowman's Complaint in July 2008.  The Complaint and attachments spanned over one hundred pages and raised numerous claims against eleven defendants.  During the course of the next several years, this Court dismissed all of

1

Bowman's claims except for a single remaining claim against Defendant Nurse Cathy

Thomas:

> Claim 1      Nurse Thomas failed to ensure that Bowman was housed at an
> appropriate facility with appropriate medical equipment after
> Bowman's October 2, 2007 hip surgery.

With respect to Claim 1, as pertinent here, Bowman alleged:

> On 9·14·07, over '2' weeks before I got my first surgery done at
> Fauquier Hospital on 10·2·07 Cathy Thomas was notified by Ms.
> Bromley—Coffeewood—that I would need special treatment due to my
> past health problems, and that Coffeewood Correctional Center (CWCC)
> was not equip [sic] 'medically' to fill my medical needs. Yet Cathy
> Thomas chose to intentionally put me at added risk for hip dislocation by
> forcing me to go back to Coffeewood on 10·5·07 after total hip replacement
> knowing since 9·14·07 that my medical needs could not be met at
> Coffeewood.
> On 10·2·07 I was taken to Fauquier Hospital from Coffeewood for
> total hip replacement (left), on 10·5·07 I was sent back to Coffeewood
> [ellipsis omitted] by Cathy Thomas and 'denyed' [sic] medical equipment
> listed in my transfer summary by my surgeon, as needed to prevent hip
> dislocation.
> On 10·23·07, '18' days later Cathy Thomas was still denying me
> needed medical equipment by not forcing Coffeewood Medical Department
> to follow my surgeon's orders.  Subsequently I fell twice, was forced to
> defecate on myself rather than use the 'too low' toilets—toilet heights at
> Coffeewood were too low for me to use with a new hip—without a toilet
> heightener, that would violate my hip precautions and put me at added risk
> for hip dislocations.
>
>       . . . .
> I was sent back to Fauquier Hospital 10·23·07 my hip was 'pop'
> [sic] back in place.  I could not! go back to Coffeewood, due to their lack of
> therapy—according to my surgeon.
> Cathy Thomas had me sent to (PMU) Powhatan Medical Unit, my
> surgeon Dr. David M. Snyder assured me, so did—Jane Dale, RN—case
> manager at Fauquier Hospital that Cathy Thomas told them, all the medical
> equipment I needed was already at Powhatan yet when I got to Powhatan
> days later the main two items—medical equipment items listed in my
> transfer summary dated 10·23·07 by my surgeon as needed to prevent hip

2

dislocation was not at Powhatan but in fact 'on order,' a toilet heightener and trapeze bar over my bed.

As a result I dislocated my new hip for the second time in a 30 day time period trying to get into a bed without my 'doctor ordered' trapeze bars.

. . . .

[Because Cathy Thomas] refused to allow me to be sent out for needed medical treatment, which forced me to lay around Powhatan over '13' days with my hip dislocated for no other reason then [sic] to intentionally, inflict me with unnecessary and wanton severe pain. Cathy Thomas violated my 8th Amend. rights under the Constitution.

(Complaint Claim 1, at 1–5 (internal citations omitted).)[1]

On May 21, 2010, Thomas moved for summary judgment with respect to Claim 1. As noted by the Court, both Thomas's May 21, 2010 Motion for Summary Judgment and Bowman's response were marked by several procedural and evidentiary deficiencies. *Bowman v. Johnson*, No. 3:08CV449–HEH, 2011 WL 1167320, at *2–3 (E.D. Va. Mar. 24, 2011).[2] As a result, the Court declined to address the merits of the motion, but

---

[1] The Court has corrected the capitalization and spacing in the quotations to Bowman's submissions.

[2] For example, neither Nurse Thomas nor Bowman had complied with Local Rule 56(B), which provides:

Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

afforded Thomas the opportunity to re-file a proper motion for summary judgment. *Id.* at

*3. In doing so, the Court admonished Thomas and Bowman, noting that:

> Any new motion for summary judgment and opposition thereto must comport with the Local Rules for the United States District Court for the Eastern District of Virginia. To the extent either party contends that the Court should not consider evidence submitted by the opposing party, he or she must identify the specific evidence contested, and the legal basis for that contention.

*Id.*

In June of 2011, Bowman was released from incarceration in the Virginia

Department of Corrections ("VDOC"). Accordingly, Bowman's Complaint is

moot as to his request for injunctive relief. *Clay v. Miller*, 626 F.2d 345, 347 (4th

Cir. 1980) (citing *Inmates v. Owens*, 561 F.2d 560 (4th Cir. 1977)). Only his

damage claim, which arises out of the time spent in the VDOC, survives his

release from custody.

On October 18, 2011, Thomas filed a Second Motion for Summary

Judgment with an appropriate *Roseboro* notice. *Roseboro v. Garrison*, 528 F.2d

309 (4th Cir. 1975). Bowman failed to respond to this motion. On November 23,

2011, Thomas moved for the substitution of counsel.

---

E.D. Va. Loc. R. Prac. 56(B). Additionally, although Bowman submitted a notarized document he called an affidavit, "there is no indication the notary administered an oath, *see McCoy v. Robinson*, 3:08CV555, 2010 WL 3735128, at *2 (E.D. Va. Sept. 22, 2010), and many of [the] other documents offered by Bowman to demonstrate that Ms. Thomas was responsible for his transfer to [Coffeewood Correctional Center] appear[ed] to be inadmissible hearsay." *Bowman*, 2011 WL 1167320, at *3 n.4.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).

When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.,* 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Emmett v.*

5

*Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

At the outset, the Court finds that Thomas's Second Motion for Summary Judgment complies with Local Rule 56(B) in that it contains a statement of undisputed and material facts. Bowman has not opposed Thomas's Second Motion for Summary Judgment. Accordingly, the Court assumes that the facts listed in Thomas's statement of undisputed material facts (Br. Supp. Second Mot. Summ. J. 3–7) are admitted. E.D. Va. Loc. R. Prac. 56(B). Defendant Thomas has supported her Second Motion for Summary Judgment with her affidavit (Br. Supp. Second Mot. Summ. J. Thomas's Second Supp'l Aff. ("Supp'l Thomas Aff."), a copy of the pertinent Operating Procedures for the VDOC (Supp'l Thomas. Aff. Encl. 1 ("Operating Procedures"), a copy of an exchange of e-mails ("Supp'l Thomas Aff. Encl. B"), and a page of Bowman's medical records.

As previously noted, Bowman's opposition to the May 21, 2010 Motion for Summary Judgment contained numerous procedural and evidentiary flaws and failed to properly identify the factual basis upon which he believed a trial was warranted. Furthermore, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)). The record in the present action exceeds 1,500 pages. Given these circumstances and the Court's previous admonitions to the parties, the Court will consider only those documents cited by Thomas in support of her

Second Motion for Summary Judgment.[3] *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he Court need consider only the cited materials" in deciding a motion for summary judgment).

In light of the foregoing principles and submissions, the following facts are established for purposes of the Second Motion for Summary Judgment. Those facts reflect that Thomas was not involved with the decisions regarding Bowman's healthcare in the fall of 2007.

### III. SUMMARY OF PERTINENT FACTS

Thomas is the Healthcare Administrator for the Eastern Region of the VDOC and has held this position at all times relevant to this Complaint. (Supp'l Thomas Aff. ¶ 1.) In her capacity as Healthcare Administrator for the Eastern Region, Thomas works under the Chief Nurse and coordinates with the Directors of Nursing at the VDOC facilities

---

[3] As earlier noted by the Court, much of the evidence Bowman previously submitted in response to the May 21, 2010 Motion for Summary Judgment was inadmissible. Thomas, however, failed to raise proper objections to the evidence. Thomas now properly challenges that evidence, were Bowman to rely upon it to oppose summary judgment. For example, Thomas correctly notes that the portions of Bowman's Sworn Statement in Opposition to the May 21, 2010 Motion for Summary Judgment (Dk. No. 96) wherein he charges that Thomas was responsible for making arrangements for his care after surgery are inadmissible because the statements are based upon hearsay, rather than personal knowledge. (*See, e.g.*, Pl.'s Sworn Statement in Opp'n to May 21, 2010 Mot. Summ. J. ¶ 5 ("Plaintiff's surgeon at Fauquier Hospital told Plaintiff he spoke to D.O.N. [Director of Nursing] in Richmond—who Plaintiff believes was Cathy Thomas and she told Plaintiff's surgeon Plaintiff could be sent to PMU, Powhatan where needed medical equipment was available.").) "[S]ummary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citation omitted) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). It is unnecessary to catalog the entirety of inadmissible evidence previously submitted by Bowman because he failed to cite the Court to any evidence that he wishes the Court to consider in opposition to the Second Motion for Summary Judgment.

within the Eastern Region. (*Id.*) Coffeewood and Powhatan Correctional Centers—the facilities at which Bowman was incarcerated during all periods relevant to Claim 1—are both located in the *Central Region* of the VDOC, outside of Thomas's bailiwick. (*Id.* ¶ 8.) Thomas does not review the cases of inmates located at those two facilities. (*Id.*)

Neither the Director of Nursing nor the Healthcare Administrator for the different regions within the VDOC is responsible for inmate medical transfers.[4] (*Id.* ¶ 5.) In accordance with Operating Procedure 720.2, effective June 1, 2007, the Office of Health Services Clinical Coordinator is the person responsible "for transferring offenders either from a hospital, an infirmary or a population to a facility that can provide the appropriate health care environment." (Operating Procedure 720.2, at 2.) Thomas never has held the position of VDOC Health Services Clinical Coordinator. (Supp'l Thomas Aff. ¶ 5.) At the time of Bowman's hip replacement surgery in 2007, Ms. Branch was the VDOC Health Services Clinical Coordinator. (*Id.*) Ms. Branch actually received correspondence regarding Bowman's condition, discussed his condition with Bowman's

---

[4] Bowman attached to his Complaint an informal request form he submitted on October 16, 2007, wherein he asked who was the individual responsible for sending Bowman to the appropriate institution after his surgery. (Compl. Claim 1 Ex. 1.) Mr. Hays, the Medical Supervisor at Coffeewood Correctional Center, identified the individual as "Kathy Thomson," "the DON." (*Id.*) Bowman has interpreted "D.O.N." to stand for the "Director of Nursing." (Compl. 2.) Nurse Thomas contends that the informal complaint could not be referring to her because her surname was Couther until 2008, when she was married and her surname changed to Thomas. (Sup'l Thomas Aff. ¶ 8.)

8

treating physician, and made decisions regarding Bowman's medical transfers.  (*Id.* ¶ 6; Supp'l Thomas Aff. Encl. B.)[5]

Thomas has "no knowledge of the reasons why Bowman was returned to Coffeewood after his 2007 hip replacement surgery, or what factors Ms. Branch . . . may have considered in making a decision about Bowman's housing at that time." (Supp'l Thomas Aff. ¶ 9.) Thomas has never been called upon to make any decisions regarding Bowman's housing or medical care and did not have authority to do so.  (*Id.* ¶¶ 5–9.)

## IV. ANALYSIS

The Eighth Amendment expressly prohibits the imposition of excessive fines or bails and the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996); *see Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323 (1991) (noting that the Eighth Amendment protects against "deprivations" that are "suffered during imprisonment"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976) (holding that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment).  To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials

---

[5] Enclosure B is an October 23, 2007 exchange of e-mails between Ms. Branch and Dr. Ajumobi.

9

acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones,* 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)).

In cases of inadequate medical attention, a prisoner satisfies the objective component by proving a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.' " *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000 (1992); *see Estelle,* 429 U.S. at 105, 97 S.Ct. at 291-92; *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir.1995).

Under the subjective prong, the inmate must demonstrate that the defendant was deliberately indifferent to his serious medical needs. *See Brown v. Harris,* 240 F.3d 383, 388 (4th Cir. 2001). Deliberate indifference requires a plaintiff to introduce evidence from which the finder of fact could conclude that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland,* 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir. 1997)).

In the immediate case, Bowman has not directed the Court to any admissible evidence from which a reasonable finder of fact could conclude that Thomas knew of his medical needs in the fall of 2007, much less that she acted with deliberate indifference. *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985) (emphasizing that a defendant "must have had personal knowledge of and involvement in the alleged deprivation of [a

10

plaintiff's] rights in order to be liable"). Therefore, Claim 1 cannot survive summary judgment.

Furthermore, Bowman has failed to direct the Court to any admissible evidence that Thomas even bore responsibility for Bowman's medical care in the fall of 2007. The United States Court of Appeals for the Fourth Circuit has explained that liability only extends to "the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked," and includes those with "the responsibility and capability to end the offensive practices." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Although the issue of whether a defendant has the responsibility and capability to prevent a constitutional violation "generally is one of fact, not law," regulations and "state statutes fixing the administrator's legal duties provide a useful guide" in this inquiry. *Id.* (internal quotation marks omitted); *Beatty v. Lanham*, No. 92-7095, 1994 WL 581458, at *1 (4th Cir. Oct. 25, 1994). The pertinent Operating Procedures in place here unmistakably reflect that the VDOC Health Services Clinical Coordinator, Ms. Branch—not Thomas—possessed the requisite authority and consequently bore the responsibility for sending Bowman to an appropriate facility to meet his health care needs. Accordingly, Claim 1 will be dismissed. Thomas's Second Motion for Summary Judgment will be granted and the action will be dismissed.

11

An appropriate Order will accompany this Memorandum Opinion.

/s/

Date: Dec 1 2011
Richmond, Virginia

HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

12